IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| HONEY A. RODGERS AND CORY RODGERS | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No.<br>) **JURY DEMANDED** |
| USAA GENERAL INDEMNITY COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

COME NOW the Plaintiffs, Honey A. Rogers and Cory Rodgers, and for their Complaint against USAA General Indemnity Company, would show as follows:

### PARTIES AND JURISDICTION

1. Honey A. Rodgers and Cory Rodgers ("Plaintiffs") currently reside at 250 Parkland Drive, Bristol, VA 24202. At all times relevant hereto, Plaintiffs were the owners and residents of 360 Boone Lake Circle, Bluff City, Tennessee 37618-2400 (the "Insured Premises").

2. The Defendant, USAA General Indemnity Company ("USAA"), is an insurance company organized under the laws of the State of Texas with its principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288. At all times relevant hereto, USAA conducted and transacted insurance business with Plaintiffs in Sullivan County, Tennessee.

3. This Complaint originates as the result of a water pipe break that caused substantial insured losses to the Plaintiff's dwelling located at the Insured Premises, and USAA's unlawful actions in refusing to properly pay the amounts owed to Plaintiffs.

4. Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Venue is proper in this Court because the Insured Premises giving rise to the insurance dispute in controversy is located in Sullivan County, Tennessee, and the events described herein occurred in Sullivan County, Tennessee.

## FACTS

### The Policy

5. At all times relevant hereto, Plaintiffs were the insureds pursuant to an insurance contract whereby USAA agreed to insure the structures and personal property located at the Insured Premises against property damage, bearing Policy No. GIC 020942470/90A (the "Policy"). The relevant Policy period is April 6, 2023 through April 6, 2024.

6. A true and correct copy of the Policy is attached as ***Exhibit 1***.

7. At all times relevant hereto, the Insured Premises consisted of a residential dwelling and surrounding area in which Plaintiffs resided.

8. The Policy provided insurance coverage for direct physical loss of or damage to the Insured Premises, Plaintiffs' personal property, and such other insurance coverage, as specifically set forth in the Policy.

9. The Policy also provides Plaintiffs with twelve (12) months of Loss of Use Protection, with no limit, pursuant to Coverage D.

10. The Policy was an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss of or damage to the covered property except for those specifically excluded or limited by the Policy.

11. Pursuant to the Policy, Plaintiffs paid an annual premium to Defendant in exchange for insurance coverage. Plaintiffs paid the required premiums at all times relevant to this Complaint.

## The Loss & Claim Investigation

12. On or about July 6, 2023, a water pipe broke at the Insured Premises, resulting in substantial direct, physical loss to the dwelling and personal property located on the Insured Premises (the "Loss").

13. The Loss occurred during the term of the Policy.

14. Plaintiffs promptly reported the Loss to Defendant, which assigned a claim number – 020942470-022.

15. Plaintiffs fulfilled all of the duties after the Loss that were imposed upon them by the Policy to the satisfaction of Defendant.

16. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

17. After the Loss, USAA initially provided payments to Plaintiffs for additional living expenses under "Loss of Use" coverage for alternate housing.

18. However, USAA stopped paying Plaintiffs' Loss of Use Protection in December 2023 without justification.

19. USAA agreed that the Insured Premises was damaged by a water pipe leak/burst, but a dispute arose between USAA and Plaintiffs as to the amount of the loss associated with the damage. Recognizing that USAA's estimations of the amount of loss was grossly insufficient to repair the damage to the Insured Premises, Plaintiffs invoked the appraisal provision of the insurance Policy in February 2024.

20. The Policy's appraisal clause provides as follows:

> Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:
>
> **a.** Pay its own appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> … [O]nce contractual liability is admitted or determined, the appraisal award is binding upon you and us. The appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

21. USAA agreed to appraisal, selecting Luke Johnson as its appraiser.

22. Neither the appraisal process nor the authority granted to the appraisers or the umpire was expanded or modified by written mutual consent of USAA and Plaintiffs.

23. Plaintiffs selected Noble McCulley as their appraiser. USAA did not object to the selected appraiser.

24. The two appraisers appointed Mike Thompson as umpire.

25. Because the Plaintiffs' claim was in appraisal and Plaintiffs' claim had not been denied or otherwise resolved, Plaintiffs requested that USAA continue to provide them with Loss of Use Protection, at a minimum, while the appraisal process was ongoing and/or until twelve (12) months from the date of Loss had been reached.

26. USAA refused Plaintiffs' requests and did not provide Plaintiffs with Loss of Use Protection past December 2023 despite agreeing to appraisal in February 2024.

27. Upon information and belief at some point during the appraisal, the two appraisers found themselves unable to agree as to the amount of the loss and they submitted their differences to the umpire, in accordance with the Policy.

28. In July 2024, the umpire, Mr. Thompson invoiced the Plaintiffs and USAA equally for a retainer for his umpire services. The Plaintiffs promptly paid Mr. Thompson's retainer invoice.

29. USAA delayed paying its portion of Mr. Thompson's retainer invoice without justification, and ultimately did not pay Mr. Thompson's retainer invoice until September 2024.

30. This unnecessarily delayed the appraisal process and caused Plaintiffs to continue to accrue damages, including but not limited to additional living expenses, which USAA likewise refused to pay.

31. In October 2024, Mr. Thompson invoiced the Plaintiffs and USAA for his final expenses equally, in accordance with the Policy. The Plaintiffs promptly paid Mr. Thompson's final invoice.

32. However, USAA refused to comply with its own Policy and as of the date of this filing, has failed to fully pay the umpire for his appraisal services.

33. USAA's baseless refusal to comply with the Policy significantly and needlessly delayed the appraisal process no less than approximately (7) months and caused Plaintiffs to accrue additional damages including but not limited to additional living expenses.

34. Despite USAA's failure to pay the umpire for his services, the appraisal panel nonetheless released the final appraisal award in March 2025, without payment.

35. The appraiser Noble McCulley and umpire Mike Thompson determined the total amount of the Loss to be $627,924.97—less depreciation—rendering the actual cash value of the Loss as $523,926.55 ("Appraisal Award") (attached hereto as ***Exhibit 2***).

36. After the Appraisal Award, Plaintiffs requested that USAA make payment pursuant to the Appraisal Award, as required under the Policy.

37. However, USAA has refused to pay the Appraisal Award with no justification.

38. The Appraisal Award, because it is not defective and there are no coverage or causation issues remaining, is binding on USAA.

39. The Plaintiffs' claim involves no coverage or causation issues, but rather, simply requires a determination of the amount of the Loss. The only disputed issue is the amount owed by USAA to Plaintiffs as a result of the Loss. There is no reasonable coverage dispute, and this claim was appropriate for the appraisal process as set forth in the Policy.

40. USAA's refusal to honor the Appraisal Award, and its refusal to pay Plaintiffs the amounts owed to them for the Loss, is without justification and constitutes a breach of the insurance contract.

41. USAA's refusal to pay the money and benefits due and owing Plaintiffs under the Policy, and its wrongful refusal to honor the Appraisal Award, have caused Plaintiffs to initiate this Complaint to recover insurance proceeds and/or other Policy benefits to which it is entitled.

42. USAA's alleged reasons for denying Plaintiffs' full claim are fabricated, wrongful, and done with the intent to injure and harass Plaintiffs.

43. USAA's failure and refusal to pay Plaintiffs the amounts owed to them for the Loss is without justification and is intentional, fraudulent, malicious, and/or reckless.

44. A dispute over scope of the work is nothing more than a dispute over the monetary value of returning the insured premises to its pre-loss condition. *See State Farm Fire & Cas. Co. v. Harper*, No. 3:20-cv-00856, 2021 U.S. Dist. LEXIS 245383, at *8 (M.D. Tenn. Aug. 13, 2021).

**CAUSES OF ACTION**

**Count I - Breach of Contract**

45. The allegations contained in preceding paragraphs of this Complaint are incorporated herein by reference as if set forth verbatim.

46. The Policy issued by USAA is a binding contract and is supported by valid consideration.

47. USAA is in total, material breach of the Policy and is liable to Plaintiffs in the maximum amount allowed by the Policy for the Loss. Specifically, USAA's breach of contract includes the following, without limitation: (a) USAA's failure and refusal to pay the amounts owed to Plaintiffs for the damages as a result of the Loss; and (b) USAA's improper attempts to interfere with, delay, or otherwise disregard, the neutral and proper appraisal process—to which the Parties properly consented—to resolve the Parties' dispute concerning the amount of the Loss.

48. As a result of USAA's breach of contract, Plaintiffs have sustained substantial, compensable losses for the amounts claimed under the Policy, including but not limited to, damages in the amount of the Appraisal Award, plus consequential damages.

49. USAA is liable to Plaintiffs for their losses.

50. USAA's breach of contract was intentional, fraudulent, malicious, and/or reckless, thereby justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013). Specifically, USAA intentionally, fraudulently, maliciously, and/or

recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiffs' full claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiffs' claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiffs' full claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to treat Plaintiffs' interests with equal regard to its own; (5) failed and refused to pay Plaintiffs' full, valid claim; (6) unnecessarily delayed payment of Plaintiffs' insured losses; (7) misrepresented relevant facts and policy provisions to Plaintiffs; (8) intentionally failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (9) forced Plaintiffs to file a lawsuit in order to enforce its rights under the Policy; (10) ignored valid portions of Plaintiffs' claim for no good reason and with no explanation; (11) refused and failed to obtain all reasonably available information before alleging it had no further obligations to Plaintiffs; (12) unreasonably delayed the handling and payment of the claim; (13) failed to fully and promptly pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (14) offered Plaintiffs substantially less than the amount actually owed in an effort to deprive it of its rights under the Policy; (15) utilized biased "experts" in an effort to deprive Plaintiffs of the insurance proceeds to which it was entitled; (16) engaged in conduct designed to decrease and minimize the amount to be paid to Plaintiffs; (17) concealed important and material facts from Plaintiffs in an effort to minimize the amount USAA would have to pay on the claim; (18) intruded into and interfered with the neutral appraisal process in an attempt to influence and delay the appraisal process and minimize the amounts paid to Plaintiffs; (19) refused to pay the expenses of the appraisal umpire, in clear violation of the Policy; (20) left its insureds with no option but to sell their home in order to avoid becoming homeless or bankrupt; and (21) such other facts and

circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial.

51. USAA knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing, or willfully disregarding the probability of causing, unjust and cruel hardship on Plaintiffs, USAA consciously ignored Plaintiffs' full, valid claim, and withheld monies and benefits rightfully due Plaintiffs.

52. Plaintiffs seek, and are entitled to, punitive damages.

**Count II – Statutory Bad Faith**

53. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

54. USAA's failure to pay the amounts contractually owed to Plaintiffs is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than 60 days have passed since a formal demand has been made on USAA and full payment has not been made for the Loss, as required pursuant to the Policy and for which the 25% statutory penalty for bad faith should be invoked.

55. The bad faith of USAA is evidenced by the fact that, at all times hereto, USAA knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy, and as otherwise promised and represented by USAA, as well as the actions of USAA as set forth above and below. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing, or willfully disregarding the probability of causing, unjust and cruel hardship on Plaintiffs, USAA consciously ignored

Plaintiffs' valid claim, denied NashComm's full claim, and withheld monies and benefits rightfully due it.

56. On January 16, 2025, Plaintiffs gave notice of its intent to sue USAA for statutory bad faith if its claim was not honored, and as of the filing of this Complaint (more than 60 days following the referenced notice), USAA has maintained its unlawful denial of Plaintiffs' full, valid claim.

57. USAA's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, specifically but not limited to the allegations set forth in Paragraph 51, which are incorporated by reference, together with the following:

   a. USAA's failure to fully inform Plaintiffs of its rights and obligations under the Policy;

   b. USAA's failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs claim when liability was reasonably clear;

   c. USAA's refusal to pay Plaintiffs' claim without conducting a reasonable investigation based on all available information;

   d. USAA's intentional refusal to fully investigate Plaintiffs' claim and to obtain all available information before alleging that it had no further obligations to Plaintiffs;

   e. USAA's intentional failure to properly adjust Plaintiffs' claim and to pay Plaintiffs fully for their losses;

   f. USAA's intentional misrepresentation of Policy provisions and law applicable to Plaintiffs' valid claims;

  g. USAA's intentional intrusion into and delay of the neutral, valid, appraisal process;

  h. USAA's engaging in acts and practices toward Plaintiffs that are contrary to the good faith duties owed to Plaintiffs; and

  i. USAA's unjustified refusal to pay Plaintiffs' claim for its own financial preservation.

58. In so acting, USAA intended to—and did—injure Plaintiffs in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiffs respectfully request that this Honorable Court award against USAA as follows:

  a) For specific performance of the Policy;

  b) For compensatory damages in an appropriate amount to be determined by the jury;

  c) For punitive damages in an appropriate amount to be determined by the jury;

  d) For a statutory bad faith penalty of 25%;

  e) For all costs incurred by Plaintiff as a result of this action;

  f) For pre- and post-judgment interest; and

  g) For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a jury of their peers.

Respectfully submitted,

McWHERTER, SCOTT & BOBBITT PLC

s/Emily S. Alcorn
J. BRANDON McWHERTER #21600
brandon@msb.law
EMILY S. ALCORN #33281
emily@msb.law
109 Westpark Drive, Suite 260
Brentwood, Tennessee 37027
T: (615) 354-1144
F: (731) 664-1540

*Attorneys for Plaintiffs*